IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MICHAEL LOVE,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )    No. 02-2478 Ml
                                       )
SHELBY COUNTY SHERIFF'S                )
DEPARTMENT,                            )
                                       )
        Defendant.                     )

_____

ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
OR ALTERNATIVELY MOTION FOR AN ORDER REDUCING THE AMOUNT OF
COMPENSATORY DAMAGES OR ALTERNATIVELY MOTION FOR A NEW TRIAL

_____

        Before the Court is Defendant's Motion for Judgment as a
Matter of Law or Alternatively Motion for an Order Reducing the
Amount of Compensatory Damages or Alternatively Motion for a New
Trial, filed June 14, 2004.  Plaintiff responded in opposition on
June 29, 2004.  For the reasons set forth below, Defendant's
motion is DENIED.[1]

I.  Background

        Plaintiff Michael Love brought this action under Title VII
of the Civil Rights Act of 1964 against Defendant Shelby County
Sheriff's Department for hostile work environment sexual
harassment.  Plaintiff, a deputy jailer employed by Defendant,
alleged that during his night shift on June 6-7, 2001, his

_____

        [1] Accordingly, Plaintiff's motion for a status conference to
discuss pending motions, filed November 14, 2005, is DENIED.

supervisor, Sergeant Shari Nichols ("Nichols"), sexually harassed him by making sexually explicit and obscene remarks and gestures. He further alleged that Defendant knew or should have known of the sexual harassment and that Defendant failed to implement prompt and appropriate corrective action.  The case was tried before a jury on May 24-26, 2004.  The jury rendered a verdict in favor of Plaintiff on May 26, 2004, and awarded him $3,330.00 in lost wages and $328,125.00 in compensatory damages.  Judgment was subsequently entered in the amount of $331,455.00.  The Court later reduced the compensatory damages award to reflect the statutory maximum amount of $300,000.00, and the final, corrected judgment was entered in the amount of $303,330.00 on August 13, 2004.

Defendant now moves this Court, pursuant to Federal Rules of Civil Procedure 50 and 59, for judgment as a matter of law, or, in the alternative, for a new trial or a remittitur.  The Court will address each motion in turn.

## II.  Analysis

### A.  Judgment as a Matter of Law

Defendant's first motion is governed by Federal Rule of Civil Procedure 50, which states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law

-2-

> against that party with respect to a claim or
> defense that cannot under the controlling law be
> maintained or defeated without a favorable finding
> on that issue.

Fed. R. Civ. P. 50(a)(1).  Pursuant to Rule 50(b), a party may renew its motion for a judgment as a matter of law after the trial so long as it moved for a judgment as a matter of law at the close of the evidence.  Fed. R. Civ. P. 50(b).  Plaintiff contends that Defendant waived its right to renew its motion for judgment as a matter of law because it failed to make its initial motion at the close of all of the evidence, as required by Rule 50(b).  The transcript reveals that Defendant made an oral motion for judgment as a matter of law at the close of Plaintiff's proof, but failed to renew the motion at the close of all of the evidence, as required under Fed. R. Civ. P. 50(b).  (Tr. 293-95, 320-28.)

It is well settled "a party who has failed to move for a directed verdict cannot request the district court to rule on the sufficiency of the evidence supporting a verdict against him nor can he raise this issue on appeal."  <u>Libbey-Owens-Ford Co. v. Ins. Co. of North America</u>, 9 F.3d 422, 426 (6th Cir. 1993).  A party waives his right to file a post-verdict, renewed motion for judgment as a matter of law where he moved for judgment as a matter of law at the end of the opposing party's case-in-chief and after the jury verdict, but neglected to do so at the close

-3-

of all the evidence.  <u>United States ex rel. A+ Homecare, Inc. v.</u>
<u>Medshares Mgmt. Group, Inc.</u>, 400 F.3d 428, 447-48 (6th Cir.
2005).

    The Sixth Circuit has held, however, that "technical
deviation from Rule 50(b)'s command is not fatal." <u>Id.</u> (quoting
<u>Riverview Inves., Inc. v. Ottawa Cmty. Improvement Corp.</u>, 899
F.2d 474, 477 (6th Cir. 1990)).  Instead, the Rule's application
"should be examined in the light of the accomplishment of [its]
particular purpose as well as in the general context of securing
a fair trial for all concerned in the quest for truth." <u>Boynton</u>
<u>v. TRW, Inc.</u>, 858 F.2d 1178, 1185 (6th Cir. 1988).  A post-
verdict motion for judgment as a matter of law may be granted
despite the party's failure to renew the motion at the close of
all of the evidence where "(1) The court indicated that the
renewal of the motion would not be necessary to preserve the
party's rights; and (2) The evidence following the party's
unrenewed motion for a directed verdict was brief and
inconsequential." <u>Riverview Inves., Inc.</u>, 899 F.2d at 477
(quoting 5A James Wm. Moore et al., <u>Moore's Federal Practice</u> §
50.08 (2d ed. 1984)).

    Neither <u>Riverview</u> exception applies here.  When Defendant
moved, at the close of Plaintiff's case, for judgment as a matter
of law, the Court neither took the motion "under advisement, nor

signaled that [Defendant] need not renew it at the close of the evidence, but rather explicitly denied it." United States ex rel. A+ Homecare, Inc., 400 F.3d at 449 (finding Riverview exception inapplicable and accordingly that appellant waived right to file renewed motion for judgment as a matter of law); see also Jackson v. Huron Development Ltd. Partnership, No. 98-2356, 2000 WL 282482, at *3 (6th Cir. Mar. 9, 2000)(holding defendants' failure to renew motion at close of all evidence constituted waiver of right to file renewed post-verdict motion where earlier motion at close of plaintiff's case was "explicitly denied").

The Court finds that the evidence presented during Defendant's case-in-chief, while not lengthy, cannot be characterized as "inconsequential" under the second Riverview factor.  Defendant recalled Janet Bates, the deputy administrator for human resources for the Shelby County Sheriff's Office.  Ms. Bates gave testimony on several critical issues in the case, including Defendant's policy and procedures regarding sexual harassment, how Defendant addressed Plaintiff's complaints, whether Defendant followed the correct procedures upon receipt of Plaintiff's complaint, what measures Defendant took to discipline Nichols and to separate Nichols and Plaintiff following the complaint, and Defendant's investigations into earlier

allegations of Nichols' harassing behavior.  (Tr. 296-320.)
Accordingly, this evidence was not "brief and inconsequential"
under the second <u>Riverview</u> factor.

As neither <u>Riverview</u> exception applies in this case, the
Court concludes that Defendant waived its right to raise a
renewed post-verdict motion for judgment as a matter of law by
failing properly to raise the motion at the close of all evidence
pursuant to Rule 50(b).

Even if Defendant had properly moved for judgment as a
matter of law at the close of evidence, however, the renewed
motion is without merit.  Judgment as a matter of law is
appropriate only when there is a complete absence of fact to
support the verdict, such that no reasonable juror could have
found for the nonmoving party.  <u>Moore v. KUKA Welding Sys. &
Robot Corp.</u>, 171 F.3d 1073, 1078 (6th Cir. 1999).  In considering
a motion for judgment as a matter of law, the court "must draw
all reasonable inferences in favor of the nonmoving party, and it
may not make credibility determinations or weigh the evidence."
<u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 151
(2000).

In this case, judgment as a matter of law is not
appropriate.  Drawing all inferences in favor of the nonmoving
party, the Court finds that a reasonable juror could have found

-6-

in Plaintiff's favor.  The evidence, as set forth below in more detail, was legally sufficient for the jury to find in Plaintiff's favor.  Accordingly, Defendant's motion for judgment as a matter of law is DENIED.

**B.  Motion for New Trial**

Federal Rule of Civil Procedure 59(a) provides that a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States ...."  Fed. R. Civ. P. 59(a).  The authority to grant a new trial under Rule 59 rests within the discretion of the trial court.  Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980); Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940).  "[A] new trial is warranted when a jury has reached a seriously erroneous result . . . ."  Strickland v. Owens Corning, 142 F.3d 353, 357 (6th Cir. 1998).  A "seriously erroneous result" is evidenced by: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias."  Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996).  In Strickland, the Sixth Circuit explained the procedure a trial court should follow in ruling on a motion for a new trial:

> [I]n ruling upon a motion for a new trial based on
> the ground that the verdict is against the weight
> of the evidence, the trial court must compare the
> opposing proofs, weigh the evidence, and set aside
> the verdict if it is of the opinion that the
> verdict is against the clear weight of the
> evidence. It should deny the motion if the verdict
> is one which could reasonably have been reached,
> and the verdict should not be considered
> unreasonable simply because different inferences
> and conclusions could have been drawn or because
> other results are more reasonable.

142 F.3d at 357 (quoting J.C. Wyckoff & Assocs., Inc. v. Standard

Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991)).

### 1.  Verdict Against the Weight of the Evidence

Defendant first contends that it is entitled to a new trial

because the jury's verdict was against the weight of the

evidence.  Specifically, Defendant argues that the Plaintiff

failed to make out a prima facie case of hostile work environment

sexual harassment.

To establish a prima facie case of a hostile work

environment based on sex, a plaintiff must prove that: (1) he was

a member of a protected class; (2) he was subject to unwelcome

sexual harassment; (3) the harassment was based on his sex; (4)

the harassment created a hostile work environment; and (5) the

employer is vicariously liable.  Williams v. General Motors

Corp., 187 F.3d 553, 560-61 (6th Cir. 1999).  A hostile working

environment exists "[w]hen the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)(citations and internal quotation marks omitted).  The environment "must be both objectively and subjectively offensive, or that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).

The Court has reviewed the trial transcript and finds that Plaintiff presented ample evidence to establish a prima facie case of hostile work environment sexual harassment.  Plaintiff testified that he was subject to unwelcome harassment, based on his sex, that created a working environment that was both objectively and subjectively offensive.  For example, Plaintiff testified that Nichols "lifted her legs up in the air" and grabbed her crotch while looking at Plaintiff "right in the eye" (Tr. 173), which Plaintiff construed as Nichols' attempt "to let [him] know that she wanted [him] sexually, she wanted to approach [him] or she wanted [him] to yield to her sexual approach."  (Id. at 174).  Plaintiff also testified that Nichols sprayed Plaintiff twice on the buttocks with a disinfectant and told him, "that's not offensive; what would be offensive is if I would spray you with my perfume, then you would have to go home and explain it to

your wife." (Id. at 175.)  Plaintiff further testified that
Nichols bumped his knee "back and forth" several times (Id. at
177) and "reached and unbuttoned my shirt . . . all the time
looking like, you know, when are you going to say yes, you know,
I'm not——I'm going to keep on coming until you give in . . . ."
(Id. at 178-79).  Plaintiff testified several times that he felt
violated, embarrassed, disgusted, and offended by Nichols'
actions towards him.  (Id. at 168-77.)  Under the totality-of-
the-circumstances approach, the jury could consider all of the
instances of harassment, and "reasonably find, 'keeping in mind
that each successive episode has its predecessors, that the
impact of the separate incidents may [have] accumulate[d], and
that the work environment created thereby may exceed the sum of
the individual episodes.'"  E.E.O.C. v. Harbert-Yeargin, Inc.,
266 F.3d 498, 509 (6th Cir. 2001)(quoting Williams, 187 F.3d at
563)).

     The evidence at trial also supported the jury's verdict that
Defendant was liable for the actions of Sergeant Nichols.  As the
Sixth Circuit has explained, "employers . . . have an affirmative
duty to prevent sexual harassment by supervisors."  Williams, 187
F.3d at 561.  "[A]n employer can escape liability only if it took
reasonable care to prevent and correct any sexually harassing

behavior."[2]  Id.  The evidence at trial showed that after Internal
Affairs investigated Plaintiff's complaints, found them to be
chargeable, and determined that Nichols should be disciplined,
Nichols was not removed or transferred; in fact, Defendant waited
almost two months to transfer Plaintiff to another facility so
that he and Nichols would not work together.  (Tr. 30.)
Plaintiff testified that he continued to work under Nichols on
occasion during the summer of 2001 and that she continued to make
derogatory and sexual comments, as well as "physical gestures"
towards Plaintiff.  (Id. at 184-85.)  Janet Bates, the

---

[2]At trial, the Court instructed the jury that Plaintiff had to
prove, as part of his prima facie case, that Defendant "knew or should
have known of the charged sexual harassment and failed to implement
prompt and appropriate corrective action."  This standard applies in
cases involving harassment by a co-worker.  By contrast, "an employer
is vicariously liable for an actionable hostile work environment
created by a supervisor with immediate (or successively higher)
                                              (continued . . . )

(. . . continued)

authority over the employee."  Clark v. United Parcel Serv., Inc., 400
F.3d 341, 348 (6th Cir. 2005)(quoting Jackson v. Quanex Corp., 191
F.3d 647, 663 (6th Cir. 1999))(emphasis in original).  "[S]trict
liability is imposed on employers for the harassing conduct of their
supervisors" unless the harassing behavior did not result in a
"negative tangible employment action for the victim" and the employer
establishes an affirmative defense.  Id.  To avail itself of the
affirmative defense, the employer must show by a preponderance of the
evidence that "the employer exercised reasonable care to prevent and
correct promptly any sexually harassing behavior, and . . . that the
plaintiff employee unreasonably failed to take advantage of any
preventive or corrective opportunities provided by the employer or to
avoid harm otherwise."  Id.
        Although the Court applied the standard for employer liability
based on a co-worker's actions rather than the strict liability
standard for a supervisor's actions, the error was harmless because
application of the less stringent standard of liability did not
prejudice Defendant.

administrator for human resources for Defendant, testified that although Nichols was eventually subjected to a three-day suspension without pay and advised to attend sexual harassment training, there was no evidence that Nichols actually attended such training.  (<u>Id.</u> at 47.)

Furthermore, Bates testified that she was aware that at least two other jail employees had complained about Nichols in March and April of 2001.  (<u>Id.</u> at 32, 302.)  Those employees' complaints were not referred to Internal Affairs for further investigation, but rather were handled "at line level"——in other words, by the captain on duty.  (<u>Id.</u> at 49, 54.)  The evidence showed that Defendant was aware of these previous incidents of alleged harassment by Sergeant Nichols, which were described in the "Summary Report of Investigation" prepared in connection with Internal Affairs' investigation into Plaintiff's allegations. (Trial Ex. 4.)

In light of the foregoing, the Court concludes that the jury's finding that Plaintiff established a <u>prima</u> <u>facie</u> case of hostile work environment sexual harassment was not against the clear weight of the evidence presented at trial.  Defendant's motion for a new trial on this ground is DENIED.

## 2.  Jury Instructions

Defendant also moves for a new trial on the basis that four

of the jury instructions were erroneous or confusing.  "One
ground for a new trial is the submission to the jury of an issue
not appropriate for its consideration." Libbey-Owens-Ford Co., 9
F.3d at 427.  However, objections to jury instructions must be
made at the trial level to preserve the issue for appeal.  Id.;
Fed. R. Civ. P. 51 ("No party may assign as error the giving or
the failure to give an instruction unless that party objects
thereto before the jury retires to consider its verdict, stating
distinctly the matter objected to and the grounds of the
objection.")  Defendant did not raise any objection to the jury
instructions at trial, but now claims that it was precluded from
doing so because the Court failed to hold a jury instructions
conference as required by Federal Rule of Civil Procedure 51.
Rule 51(b) provides that the trial court:

> must inform the parties of its proposed
> instructions and proposed action on the
> requests before instructing the jury and
> before final jury arguments; [and] must give
> the parties an opportunity to object on the
> record and out of the jury's hearing to the
> proposed instructions and action on the
> requests before the instructions and
> arguments are delivered[.]

Fed. R. Civ. P. 51(b).

Contrary to Defendant's assertion, the transcript reveals
that the Court did in fact hold a jury instructions conference
pursuant to Rule 51(b).  After the close of proof and prior to

-13-

closing arguments, the Court held a conference at sidebar specifically to review the proposed jury instructions and to address the parties' objections.  (Tr. 321-26.)  At the end of the conference, the Court asked both Plaintiff and Defendant if either side had any objections, and both replied that they had none.  (Id. at 325-26.)

    Because Defendant did not raise its objections at trial, the Court may now review the instructions only for plain error affecting substantial rights.  Fed. R. Civ. P. 51(d)(2).  As the Sixth Circuit has explained, "[o]bvious and prejudicial error in instructing the jury constitutes grounds for a new trial even if the party assigning the instructions as error failed to object before the trial court.  The grant of a new trial under these circumstances falls within the trial court's discretion to act to prevent a miscarriage of justice."  Fryman v. Fed. Crop Ins. Corp., 936 F.2d 244, 248 (6th Cir. 1991)(citations omitted).  The critical inquiry is whether the instructions, as a whole, gave the jurors sufficient guidance concerning the issues before them. Id.

    Defendant first objects to the reference to "retaliation" in the instruction regarding the policy objectives of Title VII on the basis that Plaintiff did not bring a retaliation claim.  The instruction stated that "An employee may not be required to

-14-

forego desired employment in order to escape sexual harassment or retaliation for reporting such harassment."[3]  This passing reference to retaliation during the Court's general discussion of the purpose of Title VII is not plain error.

Defendant next argues that the Court should have instructed the jury that Plaintiff had to prove that the harassment was "based on his sex" rather than "based on sex" because the jury might have erroneously believed that the harassment merely had to be sexual in nature rather than based on Plaintiff's gender.  The Court, however, also instructed the jury that Title VII makes it unlawful "for an employer to discriminate against any individual . . . because of such individual's . . . sex," and thereby clarified that the harassment had to be based on Plaintiff's gender.

Defendant also contends that the jury was improperly instructed that it could consider "whether or not Defendant followed its own policy regarding sexual harassment" in determining whether Defendant failed to take prompt and effective remedial action reasonably calculated to end the reported harassment.  This instruction was not plainly erroneous.  As the

---

[3] As no transcript of the jury instructions was prepared in this case, the Court refers to the typed set of instructions submitted to the jury prior to their deliberations.  These written instructions were also submitted to counsel for both sides prior to the charge conference.

Sixth Circuit has noted, "in determining whether [an employer] took reasonable care in preventing and promptly correcting the alleged sexual harassment . . . , we must look not only to [the employer's] sexual harassment policy, . . . but also to its implementation of that policy." Clark, 400 F.3d at 349.

Finally, Defendant objects to the instruction that the jury must "also determine whether Michael Love perceived that the sexual environment was hostile." This language was immediately followed by the explanation that the jury was to determine whether "Mr. Love subjectively found the conduct at the Shelby County Jail to be severe and pervasive." Therefore any possible confusion created by the use of the phrase "sexual environment" instead of "work environment" was remedied by the subsequent explanation of the subjective component requirement.

As set forth above, the instructions as a whole gave the jurors sufficient guidance concerning the issue before them and were not plainly erroneous. Accordingly, Defendant's motion for a new trial on this basis is DENIED.

### C.  Remittitur

Finally, Defendant moves to remit the jury's verdict on the basis that the compensatory damages award was not supported by the evidence. A trial court may remit a verdict "only when, after reviewing all evidence in the light most favorable to the

awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice[,] or is so excessive or inadequate as to shock the judicial conscience of the court." <u>Gregory v. Shelby County</u>, 220 F.3d 433, 443 (6th Cir. 2000).  An award of damages must be allowed to stand unless it "is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake."  <u>Id.</u> (citing <u>Bickel v. Korean Air Lines Co.</u>, 96 F.3d 151, 156 (6th Cir. 1996)).

The jury awarded Plaintiff $328,125.00, which the Court subsequently reduced to the statutory maximum of $300,000.00, as reflected in the Corrected Judgment, entered on August 13, 2004. Defendant contends that "there is simply no evidence to support the compensatory damage award" because "the only evidence before the jury was the self-serving statements of the Plaintiff himself." (Def.'s Mem. Supp. 5.)  Specifically, Defendant argues that there was no third-party medical or psychological evidence presented to support Plaintiff's testimony about his emotional injuries and migraine headaches experienced as a result of Nichols' conduct.

Defendant's argument is without merit.  "It is well settled that Title VII plaintiffs can prove emotional injury by testimony without medical support."  <u>Turic v. Holland Hospitality, Inc.</u>, 85

-17-

F.3d 1211, 1215 (6th Cir. 1996); <u>Seay v. Tennessee Valley</u>
<u>Authority</u>, 340 F. Supp. 2d 844, 848 (E.D. Tenn. 2004)(explaining
that a Title VII plaintiff's "own testimony, along with the facts
and circumstances of his case, can suffice to sustain his burden
of proving emotional pain and suffering, mental anguish, or loss
of enjoyment of life . . . without supporting medical evidence or
expert medical testimony.")(citing <u>Moore</u>, 171 F.3d at 1082; <u>Moody</u>
<u>v. Pepsi-Cola Metro. Bottling Co.</u>, 915 F.2d 201, 210 (6th Cir.
1990)).  However, "damages for mental and emotional distress will
not be presumed, and must be proved by 'competent evidence.'"
<u>Turic</u>, 85 F.3d at 1215(quotation omitted); <u>see also</u> <u>Harris v.</u>
<u>Forklift Systems, Inc.</u>, 510 U.S. 17, 22 (1993)(holding
compensable injury in hostile work environment claim need not
rise to level of affecting psychological well-being of victim,
but proof of some mental distress must exist).

The prescribed bases for compensatory damages for employment
discrimination actions brought under Title VII of the Civil
Rights Act of 1964 are set forth in 42 U.S.C. § 1981a(b)(3).
This section allows recovery for "future pecuniary losses,
emotional pain, suffering, inconvenience, mental anguish, loss of
enjoyment of life, and other nonpecuniary losses[.]" 42 U.S.C. §
1981a(b)(3).

At trial, Plaintiff testified at length about the emotional

and physical effects he experienced as a result of Nichols'
conduct.  For example, Plaintiff testified that Nichols' conduct
made him feel "upset and disappointed and shocked" as well as
"embarrassed[,] [d]isgusted [and] appalled."  (Tr. 177, 179.)
Plaintiff also told the jury that after Nichols' conduct ceased,
he suffered from repeated migraine headaches (<u>id.</u> at 190-92);
experienced grief, frustration, and disgust (<u>id.</u> at 193); and had
problems focusing and relating to his family (<u>id.</u> at 193-94).
Plaintiff further testified that he feels as though he is in
"suspended animation" and "stuck in [his] tracks still dealing
with something that happened to me almost three years ago."  (<u>Id.</u>
at 194.)  Plaintiff's wife, Tamara Love, also testified that
Plaintiff suffered from migraines, depression, and other
emotional problems starting in June 2001——all of which affected
Plaintiff's marital relationship as well as his interaction with
his children.  (<u>Id.</u> at 131-36.)

     In light of this testimony, the Court finds that the amount
of compensatory damages awarded in this case was supported by the
proof at trial.  Defendant's motion for remittitur is DENIED.

## III.  Conclusion

     For the reasons set forth above, Defendant's motion for
judgment as a matter of law, new trial, and remittitur is DENIED.

     So ORDERED this 20th day of April, 2006.

_/s/ Jon P. McCalla_____
JON P. McCALLA
UNITED STATES DISTRICT JUDGE